In re BRANDYWINE ASSOCIATES ANTITRUST AND MORTGAGE FORECLOSURE LITIGATION.

No. 228.

Judicial Panel on Multidistrict Litigation.

Feb. 9, 1976.

A motion was filed before the Judicial Panel on Multidistrict Litigation to transfer certain removed foreclosure actions from federal district courts in the Districts of Florida and Illinois to the Eastern District of Pennsylvania for coordinated or consolidated pretrial proceedings with an antitrust action pending in the latter district. The Panel found that although there might be some common factual issues among the actions, transfer would neither serve the convenience of the parties and witnesses nor promote the just and efficient conduct of the litigation.

Motion for transfer denied.

Courts ⟺ 277.2

Although there might be some common factual issues among removed state foreclosure actions pending in federal district courts in Districts of Florida and Illinois and antitrust action pending in Eastern District of Pennsylvania which involved common parties, transfer of foreclosure actions to Eastern District of Pennsylvania for coordinated or consolidated pretrial proceedings would neither serve convenience of parties and witnesses nor promote just and efficient conduct of litigation. 28 U.S.C.A. § 1407.

Before ALFRED P. MURRAH* Chairman, and JOHN MINOR WISDOM, EDWARD WEINFELD,* EDWIN A. ROBSON, WILLIAM H. BECKER, JOSEPH S. LORD, III, and STANLEY A. WEIGEL, Judges of the Panel.

* Judges Murrah and Weinfeld were unable to attend the hearing and, therefore, took no part in the consideration or decision of this matter.

OPINION AND ORDER

PER CURIAM.

In 1972 Valley Forge Corporation (VFC) and Certain-Teed Products Corporation (Certain-Teed) formed Brandywine Associates, a Pennsylvania limited partnership which has its only office in Philadelphia. As part of this formation, Brandywine purchased from VFC four apartment projects, a motel and an interest in an office building complex. As a condition of the sale of the apartment projects and motel, VFC allegedly required Brandywine to enter into a contract for the management of the properties by VFC Management Corporation, a subsidiary of VFC.

Soon thereafter Brandywine claims that it became aware of extensive contractual breaches and efforts by VFC to conceal these breaches. When negotiations to remedy these problems broke down in February 1975, Brandywine filed an action in the Eastern District of Pennsylvania against Certain-Teed, VFC, VFC Management Corp., Matador Motor Inns, Inc. and various individuals who were officers or directors of these corporate defendants. The complaint alleges that these defendants violated the Sherman Antitrust Act by conspiring to tie the management of certain properties to the sale of those properties and that defendants committed various breaches of contract, breaches of fiduciary duty, fraud and conversion.

Brandywine further alleges that the original contracts, for the sale of two of the apartment projects specifically stated that Builders Investment Group (BIG) was obligated to provide permanent financing for these projects, but that Brandywine never received permanent financing from BIG and was unable to procure such financing from any other source. As a result, Brandywine claims that it had no choice but to accept interim financing from CBT Realty Corporation (CBTR) for the projects. Brandy-

[right column, partially cut off]

wine contend ing was gran VFC, that th far in excess estate and charged wer with its instit action, Brand with CBTR to ing and reduc ing the cour Brandywine that the loa alive as par the profits t frauds perpetr BIG had been and was invo transactions wi including thes and BIG had to foreclose o Brandywine.

In July 1975, sure actions ag state courts of cause of Brand obligations und ments. CBTR of a receiver in possession of th action. On Br actions were re the Illinois actio of Illinois and t Northern Distric

The Florida fe the discontinuanc lished escrow ac dywine was requ nues from the F court has denied tablish a receive judge in this ac date for discover

The Illinois sta dywine to establi prior to that actic court. CBTR has action to the state

| ORDER

rge Corporation
Products Corpo-
formed Brandy-
nsylvania limited
its only office in
of this formation,
from VFC four
motel and an in-
ling complex. As
of the apartment
FC allegedly re-
enter into a con-
ent of the proper-
nt Corporation, a

andywine claims
of extensive con-
fforts by VFC to
. When negotia-
problems broke
975, Brandywine
ast— District of
—Teed, VFC,
Matador Motor
individuals who
ors of these corpo-
complaint alleges
violated the Sher-
conspiring to tie
rtain properties to
rties and that de-
arious breaches of
f fiduciary duty,

r alleges that the
the sale of two of
ts specifically stat-
tment Group (BIG)
vide permanent fi-
projects, but that
eceived permanent
and was unable to
ng from any other
Brandywine claims
but to accept inter-
BT Realty Corpora-
projects. Brandy-

terefore took no part

wine contends that this interim financ-ing was granted as an accommodation to VFC, that the amount of the loans was far in excess of the value of the real estate and that the interest rates charged were usurious. Concurrently with its institution of the Pennsylvania action, Brandywine began negotiations with CBTR to extend the interim financ-ing and reduce the interest rates. Dur-ing the course of these negotiations, Brandywine alleges that it discovered that the loans were intended to keep it alive as part of a conspiracy to milk all the profits that could be made from the frauds perpetrated on Brandywine; that BIG had been formed by Certain-Teed and was involved in several financial transactions with Certain-Teed and VFC, including these loans; and that CBTR and BIG had agreed among themselves to foreclose on the properties held by Brandywine.

In July 1975, CBTR instituted foreclo-sure actions against Brandywine in the state courts of Illinois and Florida be-cause of Brandywine's failure to meet its obligations under the mortgage agree-ments. CBTR also sought appointment of a receiver in the Florida action and possession of the premises in the Illinois action. On Brandywine's motion, both actions were removed to federal court, the Illinois action to the Eastern District of Illinois and the Florida action to the Northern District of Florida.

The Florida federal court has ordered the discontinuance of a previously estab-lished escrow account into which Bran-dywine was required to place all reve-nues from the Florida project; and the court has denied CBTR's motion to es-tablish a receivership. In addition, the judge in this action has set a cut-off date for discovery.

The Illinois state court ordered Bran-dywine to establish an escrow account prior to that action's removal to federal court. CBTR has moved to remand the action to the state court and Brandywine has moved the federal court to set aside the state court's order.

In August 1975 Brandywine was given leave by the court to amend its com-plaint in the Pennsylvania action to in-clude four new defendants: BIG, CBTR, Connecticut Bank and Trust (Bank) and the president of BIG. The amended complaint contains allegations that these defendants actively participated in the original antitrust conspiracy. Both CBTR and Bank have moved to be dismissed from this action.

This matter is before the Panel as a result of Brandywine's motion to trans-fer the Florida and Illinois actions to the Eastern District of Pennsylvania for co-ordinated or consolidated pretrial pro-ceedings pursuant to 28 U.S.C. § 1407 with the action pending there. All other parties oppose the motion.

Although there may be some common factual issues among these actions, we find that transfer under Section 1407 would neither serve the convenience of the parties and witnesses nor promote the just and efficient conduct of this liti-gation.

Brandywine contends that the anti-trust conspiracy charges are involved in all three actions, by way of the com-plaint in the Pennsylvania action and by way of counterclaims in the two foreclo-sure actions, and that these charges raise common questions of fact, including the following: the manner of and purpose behind the formation of Brandywine; the value of the properties which Bran-dywine purchased from VFC, including questions of the construction of the properties; the reasons why VFC and BIG failed to provide Brandywine with the proper permanent financing for two of the properties; the manner of and reasons behind CBTR's involvement in the interim financing of these two prop-erties; the nature of and reasons for BIG's involvement in that interim fi-nancing; and the motivation of BIG and CBTR in instituting the foreclosure ac-tions against Brandywine. As a result,

Brandywine asserts that discovery in all actions will cover the same ground and that transfer is necessary to avoid costly duplication of effort.

Frankly, we are simply not persuaded that movant has met the criteria for transfer of a minimal number of actions under Section 1407, which we enunciated in *In re Scotch Whiskey Antitrust Litigation*, 299 F.Supp. 543 (Jud.Pan.Mult. Lit.1969). In that decision, we stated that in order to demonstrate that the just and efficient conduct of the litigation would be promoted by transfer where only a minimal number of actions are involved, the moving party bears a strong burden to show that the common questions of fact are so complex and the accompanying discovery so time-consuming as to overcome the inconvenience to the party whose action is being transferred and its witnesses. Id. at 544.

Only three actions are involved here. For the purposes of this litigation, the inconvenience to the party whose actions are proposed for transfer can be derived from the realization that the foreclosure aspect of the Florida and Illinois actions involves mostly, if not entirely, local factual, legal and potentially administrative issues. Thus, movant has not convinced us that these actions are so complex and the accompanying discovery so time-consuming as to overcome the inconvenience to the litigants and their witnesses, as well as the burden on the judiciary, of having the predominantly local Illinois and Florida actions transferred to an out-of-state forum. Moreover, the Florida action is proceeding expeditiously toward trial, the judge supervising the action has been very involved in its progress to date and, as a result, its most just and efficient disposition can surely be achieved by leaving it in Florida. See *In re Disposable Diaper Patent Validity Litigation*, 362 F.Supp. 567, 568 (Jud. Pan.Mult.Lit.1973).

IT IS THEREFORE ORDERED that the motion to transfer the actions listed on the following Schedule A be, and the same hereby is, DENIED.

### SCHEDULE A

**Eastern District of Pennsylvania**

| | |
|---|---|
| Brandywine Associates v. Certain-Teed Products Corp., et al. | Civil Action No. 75–516 |

**Eastern District of Illinois**

| | |
|---|---|
| CBT Realty Corp. v. Brandywine Associates, et al. | Civil Action No. CV 754–084 |

**Northern District of Florida**

| | |
|---|---|
| CBT Realty Corp. v. Devoe, et al. | Civil Action No. CCA 75–20 |



In re AIR CRASH DISASTER IN the IONIAN SEA ON SEPTEMBER 8, 1974.

No. 229.

Judicial Panel on Multidistrict Litigation.

Jan. 26, 1976.

In litigation arising out of crash of commercial aircraft resulting in death of 36 Americans and 43 foreign nationals, the Judicial Panel on Multidistrict Litigation transferred two actions pending in the Eastern District of Pennsylvania, two actions in the District of Maryland and one in the Northern District of California to the Southern District of New York in which nine actions were pending. The Panel also held that it would be premature to determine the propriety of remand of the California action once the coordinated or consolidated pretrial proceedings have been concluded.

Order accordingly.

1. **Courts ⚖︎277.2**

   Multidistrict air disaster actions, two of which were pending in the Eastern District of Pennsylvania, two in the District of Maryland and one in the Northern District of California, would be transferred to the Southern District of